UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Alan Rubenstein, as trustee of the Paula Schneider 2008 Irrevocable Life Insurance Trust,<br><br>Plaintiff,<br><br>-v-<br><br>ReliaStar Life Insurance Company and Security Life of Denver Insurance Company,<br><br>Defendants. | 2:23-cv-6184<br>(NJC) (JMW) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Alan Rubenstein ("Rubenstein"), as trustee of the Paula Schneider 2008 Irrevocable Life Insurance Trust, brought this action in the Supreme Court of the State of New York, Nassau County (the "State Court") on July 13, 2023. (Verified Compl., ECF No. 1-1 at 4.) Rubenstein brings claims under New York common law for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment against Defendants ReliaStar Life Insurance Company ("ReliaStar") and Security Life of Denver Insurance Company ("Security Life," and together, "Defendants"), stemming from the lapse of a one-million-dollar life insurance policy for which Rubenstein served as the trustee. (*Id.*) Rubenstein seeks relief in the form of damages—or in the alternative, disgorgement of all revenues and profits resulting from premium payments and the establishment of a constructive trust from which Rubenstein may seek restitution—and a declaratory judgement that the Policy has not lapsed and should be reinstated upon remittance of outstanding payments owed. (*Id.*) On August

16, 2023, Defendants removed this action to federal court, invoking this Court's diversity jurisdiction. (Not. Removal, ECF No. 1.)

Before the Court is Defendants' fully-briefed Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Not. Mot., ECF No. 23; Mem. L. Supp. Defs.' Mot. Summ. J. ("Defs.' MSJ Mem."), ECF No. 23-1.) For the reasons set forth below, Rubenstein's claims against Defendant Security Life are dismissed with prejudice and the Court grants summary judgment to Defendant ReliaStar on Rubenstein's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

## JURISDICTION

As addressed in my January 22, 2025 Order, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). (Elec. Order, Jan. 22, 2025.) There is complete diversity of the parties because Plaintiff Rubenstein is a citizen of New York and Defendants ReliaStar and Security Life are citizens of Minnesota and Colorado respectively. (*Id.*) Moreover, the amount in controversy exceeds $75,000 because the Complaint seeks compensatory damages in an amount that "reflects the value of the Policy," and the Policy has a value of one million dollars. (*Id.*; Verified Compl.)

## FACTUAL BACKGROUND

Rubenstein has failed to submit a Local Rule 56.1 Counterstatement, or any other evidence, in opposition to Defendants' Motion for Summary Judgment. *See infra* Discussion § I. Accordingly, the facts as stated below are drawn from Defendants' Rule 56.1 Statement of Undisputed Facts ("Rule 65.1 Statement") and the corresponding exhibits submitted in support of Defendants' August 30, 2024 pre-motion conference letter. (*See* Rule 56.1 Statement, ECF No. 19-1; ECF Nos. 19-2 through 19-27.)

2

On July 16, 2008, ReliaStar issued Flexible Premium Adjustable Life Insurance Policy No. 4008267 (the "Policy") to the Paula Schneider 2008 Irrevocable Life Insurance Trust (the "Schneider Trust"), insuring Paula Schneider. (Rule 56.1 Statement ¶¶ 1–2.) Security Life took no part in issuing the Policy, and payments were paid to ReliaStar, not Security Life. (*Id.* ¶¶ 3–4.) After the initial annual premium was received in 2008, all future premiums were paid on a quarterly basis. (*Id.* ¶ 6.) Pursuant to the Policy, failure to pay by the quarterly deadline triggers a 61-day grace period, after which point the Policy lapses and terminates. (ECF No. 19-4 at 19.) Additionally, following non-payment of a premium, ReliaStar customarily sends two notices to policy owners warning that the policy is in "danger of lapsing." (Brandi Haugen Decl. ¶ 13; *see, e.g.*, Defs.' Ex. I, ECF No. 19-11 at 2.)

On October 31, 2012, Rubenstein became the trustee for the Schneider Trust and updated the Trust's address to Rubenstein's home address in Woodmere, New York. (Rule 56.1 Statement ¶¶ 7–8.) Rubenstein admits that he did "not keep track of when . . . the premiums [were] due," instead waiting until he received a late payment letter to pay the Policy's premium during the grace period. (Defs.' Ex. S ("Rubenstein Dep.") 20:7–21:14, ECF No. 19-22; *see also* Rule 56.1 Statement ¶¶ 10–11.) As a result, during the COVID-19 pandemic, ReliaStar sent first and second late payment notices to Rubenstein concerning six separate past due payments. (*See* Defs. Ex. I (including late payment notices dated March 16, 2020, April 15, 2020, July 16, 2020, August 17, 2020, October 16, 2020, November 16, 2020, January 19, 2021, February 18, 2021, April 16, 2021, May 17, 2021, July 16, 2021, and August 16, 2021).) Each time, Rubenstein paid after receiving the second late payment letter. (*See* Rule 56.1 Statement ¶ 17.) Additionally, Rubenstein allowed the Policy to lapse in July 2015 and October 2015 but reinstated it both times within the timeframe for doing so. (Rule 56.1 Statement ¶¶ 12–15.)

3

In October 2021, Rubenstein failed to pay by the quarterly premium deadline of October 16, 2021. (*Id.* ¶ 19.) This time, however, Rubenstein failed to pay by the end of the grace period, which caused the Policy to lapse on December 18, 2021. (*Id.* ¶¶ 19, 24–25; Defs.' Ex. M ("Final Cancelation Notice"), ECF No. 19-15.) ReliaStar's "Policy file" includes two late payment notices associated with this missed payment—one dated October 18, 2021 and titled "First Notice Request for Premium Payment" ("First Notice") and the other dated November 17, 2021 and titled "Second Notice Request for Premium Payment" ("Second Notice"). (*See* Defs.' Ex. K ("Oct. 18, 2021 Notice"), ECF No. 19-13; Defs.' Ex. L ("Nov. 17, 2021 Notice"), ECF No. 19-14; *see also* Haugen Decl. ¶ 23 (declaring that these notices were "saved into the Policy file").) Both notices warn that the Policy "does not have sufficient cash value and premiums to keep your policy in force" and that payment of $19,739.17 was due by December 18, 2021 "[t]o prevent your policy from lapsing." (Oct. 18, 2021 Notice; Nov. 17, 2021 Notice.) The notices further warn that "[i]f coverage lapses, the policy and all payments thereon will become forfeited and void . . . " (Oct. 18, 2021 Notice; Nov. 17, 2021 Notice.) Both notices are addressed to Rubenstein at his Woodmere address. (Oct. 18, 2021 Notice; Nov. 17, 2021 Notice.)

ReliaStar submitted a declaration from Brandi Haugen, who attests that the notices were created pursuant to ReliaStar's ordinary business practices, whereby its "admin system" automatically generates late payment notices and simultaneously sends the notices to printing and to ReliaStar's Policy file. (Haugen Decl. ¶¶ 19, 23.) Haugen further declares that the mailing center was operating as normal on the dates of the notices, that ReliaStar did not receive an alert that the notices failed to print, and that he is "aware of no instances in which a print job was located in ReliaStar's policy file but failed to be sent to [the mailing server]." (*Id.* ¶¶ 20, 22–23.) Therefore, evidence in the record indicates that ReliaStar mailed the First Notice on or around

4

October 18, 2021 and the Second Notice on around November 17, 2021, both to Rubenstein's Woodmere home address. (Rule 56.1 Statement ¶¶ 20–21.) Neither notice was returned to ReliaStar as undeliverable. (*Id.* ¶ 23.)

On December 20, 2021, ReliaStar mailed Rubenstein a "Final Cancellation Notice" informing him that because ReliaStar had not received a quarterly premium payment by the December 18, 2021 final due date, the Policy had lapsed and therefore terminated. (*Id.* ¶ 25.) This final notice was also mailed to Rubenstein's Woodmere address. (Final Cancelation Notice.)

On January 5, 2022, Rubenstein called ReliaStar's customer service and stated that he "had COVID for the last three weeks," "missed a payment," and "wanted to know if there's any way [he] [could] send in a payment." (*Id.* ¶ 26.) He did not report that he did not receive any non-payment notices. (*Id.* ¶ 27.) He then wired a payment of $19,740.00 to ReliaStar on January 7, 2022 but failed to apply for reinstatement as he had done in July 2015 and October 2015. (*Id.* ¶¶ 12–15, 28, 30.) On January 14, 2022, ReliaStar returned the payment, informing Rubenstein that the payment could not be accepted because the Policy had lapsed on December 18, 2021. (*Id.* ¶ 29.)

Rubenstein testified in his deposition that he did not receive the First or Second Notice and that the "sole basis" for not receiving them was "intermittent service of the mail carriers." (Rubenstein Dep. 90:19–16.)

**PROCEDURAL HISTORY**

Rubenstein commenced this action in the State Court on July 13, 2023—one and half years after the Policy lapsed. (Verified Compl.) On August 16, 2023, Defendants removed this action to federal court, invoking this Court's diversity jurisdiction. (Not. Removal.) The case was

5

originally assigned to District Judge Gary R. Brown. (Elec. Order, Aug. 17, 2023.) On October 16, 2023, Magistrate Judge James M. Wicks set an initial Scheduling Order. (ECF No. 12.) Three days later, on October 19, 2023, the case was reassigned to my docket. (Elec. Order, Oct. 19, 2023.)

Rubenstein missed "every deadline in the Court's initial Scheduling Order" and never served initial disclosures, interrogatories, or document demands. (ECF No. 19-9 ¶ 2.) As a result, on May 3, 2024, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss for failure to prosecute under Rule 41, Fed. R. Civ. P. (ECF No. 15.) After issuing an Order to Show Cause and hearing from Rubenstein in response, I denied Defendants' letter motion without prejudice. (Elec. Order, May 7, 2024; Elec. Order May 17, 2024.) The Court re-scheduled discovery deadlines. (ECF No. 17.)

On August 30, 2024, Defendants timely filed a letter seeking a conference in anticipation of filing a summary judgment motion, a supporting Rule 56.1 Statement of Undisputed Facts, the Haugen Declaration, and twenty-five exhibits. (ECF Nos. 19, 19-1 through 19-27.) After receiving an extension of time, Rubenstein timely filed an opposition letter on October 2, 2025. (ECF No. 21; Elec. Order, Sept. 18, 2024.) However, Rubenstein failed to include a response to Defendants' Rule 56.1 Statement, as required by the Court's Individual Rule 5.5.1. (*See* ECF No. 21.) After reviewing the parties' submissions, the Court waived the pre-motion conference requirement and set a briefing schedule for Defendants' summary judgment motion. (Elec. Order, Oct. 10, 2024.)

Pursuant to the briefing schedule and the Court's recommended bundling practice, the parties filed their submissions on Defendants' Motion for Summary Judgement on December 19, 2024. (Not. Mot.; Defs.' MSJ Mem.; Mem. L. Opp'n Defs.' Mot. Summ. J. ("Pls.' Opp'n"), ECF

6

No. 24; Reply Mem. L. Supp. Defs.' Mot. Summ. J. ("Defs.' MSJ Reply"), ECF No. 25.) Those submissions show that Rubenstein untimely served Defendants his opposition—which is incorrectly labeled as an opposition to "Defendants' *Motion to Dismiss*"—on December 6, 2024, one day after the applicable deadline. (Pls.' Opp'n (emphasis added).) Additionally, Rubenstein again failed to submit a Response to Defendants' Rule 56.1 Statement or any supporting evidence for his own factual assertions. (*See id.*)

On January 3, 2025, the Court issued an order requiring Defendants to show cause why the action should not be remanded for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c). (Elec. Order, Jan 3, 2025.) Defendants filed a response on January 17, 2025. (ECF No. 27.) On January 22, 2025, the Court found that Defendants had demonstrated this Court's diversity jurisdiction under 28 U.S.C. 1332(a) because Rubenstein is a citizen of New York, Defendants are citizens of Minnesota and Colorado, and one million dollars is the amount in controversy. (Elec. Order, Jan 22, 2025.)

Defendants' Motion is therefore fully briefed, and the Court has jurisdiction over this action.

## LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 219 (S.D.N.Y. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).[1] "A fact is material if it 'might affect the outcome of

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

7

the suit under the governing law.'" *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 145 S. Ct. 1020 (2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024) (summary order). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks*, 593 F.3d at 166.

A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant defendant only if we conclude that on the record presented, considered in the light most favorable to the non-movant plaintiff, no reasonable jury could find in the plaintiff's favor."). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

## DISCUSSION

### I. Summary Judgement Evidence

As a preliminary matter, Defendants argue that because Rubenstein filed his memorandum in opposition one day late and without an accompanying Rule 56.1 Statement, I should "ignore Plaintiff's Response." (Defs.' MSJ Reply at 3.)

Both Local Rule 56.1 and Individual Rule 5.5 require that "papers opposing a motion for summary judgment . . . include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, *each numbered paragraph* in the statement of the moving party." Local Civ. R. 56.1(b) (emphasis added); *see also* Individual R. 5.5.1. Additionally, each statement denying a statement of material fact, "must be followed by citation to evidence that would be admissible" and any fact not "specifically denied and controverted" is "deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c)–(d).

Rather than submit a Local Rule 56.1 Counterstatement responding to *each numbered paragraph* in Defendants' Rule 56.1 Statement, Rubenstein included in his opposition brief a section titled "Counter Factual Statement," which "incorporate[s] the allegations in the Complaint" and only responds to five of Defendants' assertions of material fact, doing so in conclusory fashion and without citing any evidence. (Pls.' Opp'n at 2–3; *see, e.g., id.* ¶ 25 ("Plaintiff denies that ReliaStar mailed this notice and requests that this issue of fact be tried in this court.").)

I deem all facts set forth in Defendants' Rule 56.1 Statement admitted because Rubenstein has failed to submit a response that complies with Local Civil Rule 56.1's requirement that any statement denying the moving party's statement of material fact "must be followed by citation to evidence that would be admissible . . . ." Local Civ. R. 56.1(c)–(d).

9

Moreover, I have reviewed Defendants' 56.1 Statement to ensure that all recounted facts are established by the evidence cited in the Statement.

Although Rubenstein's brief was filed one day late, in an abundance of caution, the Court carefully considers all arguments set forth in the brief in ruling on Defendants' Motion for Summary Judgment. *Cf. Gittens-Bridges v. City of New York*, No. 19-cv-272, 2022 WL 954462, at *1 n.3, 13 (S.D.N.Y. Mar. 30, 2022), *aff'd*, 2023 WL 8825342 (2d Cir. Dec. 21, 2023) (striking a plaintiff's untimely opposition brief and Rule 56.1 Counterstatement where the opposition brief was submitted a month late and the Rule 56.1 Counterstatement did not comply with the requirements of Local Rule 56.1).

## II. Claims Against Security Life

Defendants argue that Rubenstein's claims against Security Life should be dismissed because only ReliaStar issued the Policy, accepted premiums, and sent premium notices. (Defs.' MSJ Mem. at 6.) Rubenstein agreed to dismiss Security Life from the lawsuit but failed to do so. (Rule 56.1 Statement ¶ 33.) Rubenstein's opposition brief fails to address Defendants' arguments with respect to Security Life. Therefore, Rubenstein has abandoned his claims against Security Life, and Security Life is dismissed with prejudice. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

## III. Claims Against ReliaStar

### A. Breach of Contract

ReliaStar argues that summary judgment should be granted on Rubenstein's breach of contract claim against it for two reasons. First, it argues that it did not breach the Policy by

10

terminating it. (Defs.' MSJ Mem. at 7–8.) Second, ReliaStar argues that even if there was a breach, the alleged damages were not caused by the breach. (*Id.* at 8–9.) I need not evaluate ReliaStar's second argument because there is no genuine dispute of material fact that ReliaStar did not breach the Policy, and accordingly, Rubenstein cannot prevail on his breach of contract claim.

"In order to recover from a defendant for breach of contract, a plaintiff must prove . . . (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *see also Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024).

Here, the Policy states that it will lapse "at the end of a 61-day grace period if sufficient payment is not received" and that the grace period "begins on the date we *send* you written notice of the required payment." (ECF No. 19-4 at 19 (emphasis added).) ReliaStar argues that, as a result, whether a policy holder received a non-payment notice is immaterial—once ReliaStar sends a non-payment notice, the grace period begins and ReliaStar may terminate the Policy at the end of the grace period. (Defs.' MSJ Mem. at 7.) Rubenstein does not appear to dispute this reading of the Policy language. (*See* Pls.' Opp'n at 4 ("As stated in Defendant's motion, the Policy provides a 'grace period begins on the date we send you written notice.'").) Instead, Rubenstein argues that ReliaStar "misstates whether it sent these required written notices." (*Id.*) However, ReliaStar submitted the First Notice and Second Notice, both of which are addressed to Rubenstein and are located in its Policy file. (Oct. 18, 2021 Notice; Nov. 17, 2021 Notice.) Moreover, Haugen attests that these notices were created by ReliaStar's "admin system"

11

pursuant to business practices whereby notices are only saved in the Policy file if they are mailed to the policy holder. (Haugen Decl. ¶¶ 19–20, 22–23 *see also supra* Factual Background (discussing this factual evidence in further detail).) Because Rubenstein fails to submit any evidence to controvert these facts, he has failed to show that a reasonable jury could determine, based on evidence in the record, that ReliaStar breached the contract.

Moreover, even if the Policy had required that Rubenstein receive the notices before ReliaStar terminated the Policy—rather than that ReliaStar simply mail the notices—a reasonable jury still could not conclude that ReliaStar breached the Policy. "[A] presumption of receipt arises where, as here, the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010). "To rebut this presumption, a litigant must show that routine office practice was not followed or was so careless that it would be unreasonable to assume that notice was mailed[,] . . . [m]ere denial of receipt is insufficient." *Id.*; *see also Akey v. Clinton Cnty.*, 375 F.3d 231, 234 (2d Cir. 2004). Because ReliaStar submits evidence that the First and Second Notices were mailed to Rubenstein's Woodmere address pursuant to routine office practice, Rubenstein's bare, unsubstantiated assertions within his opposition and his deposition testimony that he did not receive the notices "because of ongoing disruptions to the mail caused by COVID-19" are therefore insufficient to overcome the presumption of receipt. Pls.' Opp'n at 3; *see also* Rubenstein Dep. 90:9–16; *Ma*, 597 F.3d at 92.

Accordingly, I grant ReliaStar summary judgment on Rubenstein's breach of contract claim because the undisputed record shows that Rubenstein did not breach the Policy.

12

### B. Remaining Claims for Breach of the Covenant of Good Faith and Fair Dealing, Unjust Enrichment, and Declaratory Judgment

ReliaStar next moves for summary judgment on Rubenstein's remaining claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment and on his request for declaratory judgment on the grounds that these claims are duplicative of Rubenstein's breach of contract claim. (Defs.' MSJ Mem. at 9.) In the alternative, ReliaStar argues that Rubenstein has not identified a dispute of material fact sufficient to sustain any of these three claims. (*Id.* at 10–11.) I agree and therefore grant summary judgment against Rubenstein on the claims for breach of the covenant of good faith and fair dealing and unjust enrichment and on Rubenstein's request for declaratory relief.[2]

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). So too, "New York's highest court has made clear . . . that 'unjust enrichment is not a catchall cause of action to be used when others fail'" nor is it "available where it simply duplicates, or replaces, a conventional contract or tort claim." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages."). Finally, a declaratory judgment claim is duplicative and should be dismissed where

---

[2] In addition, Rubenstein's request for declaratory judgment is dismissed because he has abandoned that form of relief by failing to respond to ReliaStar's motion for summary judgment on that claim. *See* Pls.' Opp'n; Defs.' MSJ Reply at 6; *Jackson*, 766 F.3d at 198.

"resolution of Plaintiffs' breach of contract claim in Plaintiffs' favor will resolve the sole issue presented in Plaintiffs' declaratory judgment claim." *Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 253 (E.D.N.Y. 2024) (collecting cases).

Here Rubenstein's breach of the covenant of good faith and fair dealing, unjust enrichment, and declaratory judgment claims are all duplicative of his breach of contract claim because they are all predicated on his assertion that ReliaStar did not send him, and he did not receive, any notices before the Policy lapsed. (*See* Pls.' Opp'n at 6 ("[I]t is a breach of fair dealing [to close a policy] unilaterally without taking particular steps to communicate with Plaintiff."); *id.* at 4 ("ReliaStar had closed the policy without notice in violation of the Policy and the covenant of good faith and fair dealing"); *id.* at 7 (ReliaStar was unjustly enriched because it "received $70,000 annually [from Rubenstein] only to close the policy without communicating with [Rubenstein]"); Compl. ¶ 48 (seeking a declaration that "the Policy was not lapsed").)[3] As I found above, there is no genuine dispute of material fact that ReliaStar sent two notices to

---

[3] To the extent Rubenstein argues that it was a breach of the covenant of good faith and fair dealing or unjust enrichment for ReliaStar to close the Policy after receiving $70,000 annually, irrespective of whether it provided notice before doing so, that argument also fails for several reasons. First, as ReliaStar argues, "ReliaStar provided insurance coverage for as long as the Policy was in force" so the fact "that the insured did not happen to pass away while [Rubenstein] kept the Policy in force certainly does not mean that ReliaStar breached its obligation to bear that risk." (Defs.' MSJ Mem. at 11.) Second, although ReliaStar had previously reinstated the Policy when Rubenstein applied for reinstatement following lapses on two separate occasions in 2015, the undisputed record also shows that Rubenstein called ReliaStar after the policy lapsed on December 18, 2021, but it does not show that he followed any steps to seek reinstatement after making that call. (Rule 56.1 Statement ¶¶ 12–15, 30; Defs.' Ex. N 3:10–14, ECF No. 19-16.) Moreover, during the call, a ReliaStar representative made clear that Rubenstein was required to fill out and return a separate application to seek reinstatement of the lapsed Policy. (Defs.' Ex. N 3:10–14.) Finally, although Rubenstein blames COVID-19 restrictions for his failure to pay the premium, he admitted that he was not aware of any COVID-19 restrictions that impacted mail communications during the period at issue. (Rubenstein Dep. 77:5–21.)

14

Rubenstein, that Rubenstein failed to prevent the Policy from lapsing on December 18, 2021, and that the Policy therefore lapsed on December 18, 2021. *See* Discussion § III.A.

Accordingly, I grant summary judgment to ReliaStar on Rubenstein's claims for breach of the covenant of good faith and fair dealing, unjust enrichment, and declaratory judgment.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 23) is granted in full. Accordingly, Rubenstein's claims against Defendant Security Life are dismissed with prejudice and the Court grants summary judgment to Defendant ReliaStar on Rubenstein's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. The Clerk of Court is respectfully directed to enter judgment consistent with this Memorandum and Order and close the case.

Dated: Central Islip, New York
September 11, 2025

                                               */s/ Nusrat J. Choudhury*
                                               NUSRAT J. CHOUDHURY
                                               United States District Judge